**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

YEHUDA KATZ,                                    )
Individually and on behalf of a class,          )
                                                )
                   Plaintiff,                   )          Case No. CV:1:14-00740-PAC
                                                )
         v.                                     )
                                                )
THE DONNA KARAN COMPANY, LLC;                   )
THE DONNA KARAN COMPANY STORE, LLC;             )
DONNA KARAN INTERNATIONAL, INC.                 )
                                                )
                   Defendants.                  )

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES**

**IN OPPOSITION TO DEFENDANTS' MOTION TO DIMISS**

Herzfeld & Rubin, P.C.
125 Broad Street
New York, New York 10004-2400

The Law Offices of Shimshon Wexler, PC
216 West 104th St., #129
New York, New York 10025

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................... iii

INTRODUCTION ....................................................................................................................... 1

I.    The First Amended Complaint Sets Forth More than Sufficient Factual Allegations
      Plausibly Pleading That Defendants' Admitted Statutory Violations Were Reckless. ............... 2

II.   Recklessness Sufficient to Establish a "Willful" Violation Under FACTA, As With
      Other Civil Statutes, Has No Subjective Component, But May Be Plausibly Alleged
      Based on Objective Facts, As Plaintiff Has Done Here ............................................................ 5

III.  Plaintiff Has Statutory and Constitutional Standing to Bring the Claim Congress
      Authorized in the Court on Which Congress Conferred Jurisdiction over that Claim .......... 12

      a.    Statutory standing ....................................................................................................... 12

      b.    Constitutional standing ............................................................................................... 18

CONCLUSION .......................................................................................................................... 22

# TABLE OF AUTHORITIES

Page

**Cases**

*Angermeir v. Cohen,*
   2014 U.S. Dist. LEXIS 42403 (S.D.N.Y. Mar. 27, 2014) ................................................16

*Armes v. Sogro, Inc.,*
   932 F. Supp. 2d 931 (E.D. Wis. 2013) ................................................14

*Avila v. NOW Health Group, Inc.,*
   2014 U.S. Dist. LEXIS 99178 (N.D. Ill. Jul. 17, 2014) ................................................7, 9, 11

*Bateman v. Am. Multi-Cinema, Inc.,*
   623 F.3d 708 (9th Cir. 2010) ................................................17

*Baur v. Venemanm,*
   352 F.3d 625 (2d Cir. 2003) ................................................21

*Beaudry v. TeleCheck Servs.,*
   579 F.3d 702 (6th Cir. 2009) ................................................14, 17, 20

*Braun v. Client Servs.,*
   2014 U.S. Dist. LEXIS 45624 (S.D.N.Y. Mar. 31, 2014) ................................................17

*Buchok v. J.C. Penney Corp.,*
   2010 U.S. Dist. LEXIS 75134 (D. Conn. July 26, 2010) ................................................11

*Buechler v. Keyco, Inc.,*
   2010 U.S. Dist. LEXIS 40197 (D. Md. Apr. 22, 2010) ................................................3, 11

*Connecticut Fishermen's Ass'n v. Remington Arms Co., Inc.,*
   989 F.2d 1305 (2d Cir. 1993) ................................................8

*Creative Hospitality Ventures, Inc. v. United States Liab. Ins. Co.,*
   655 F. Supp. 2d 1316 (S.D. Fla. 2009) ................................................14

*Crupar-Weinmann v. Paris Baguette Am., Inc.,*
   2014 U.S. Dist. LEXIS 91119 (S.D.N.Y. Jun. 30, 2014) ................................................8

*DMJ Assocs., L.L.C. v. Capasso,*
   288 F. Supp. 2d 262 (E.D.N.Y. 2003) ................................................20

*Doe v. Chao,*
   540 U.S. 614 (2004) ................................................16, 17

*Donoghue v. Bulldog Investors Gen. P'ship,*
   696 F.3d 170 (2d Cir. 2012) ................................................13, 19, 20

*E.M. v. New York City Dep't of Educ.,*
   2014 U.S. App. LEXIS 13257 (2d Cir. Jul. 11, 2014) ................................................13, 19

*Engel v. Scully & Scully, Inc.,*
   279 F.R.D. 117 (S.D.N.Y. 2011) ................................................14

*Evans v. Lynn,*
  537 F.2d 571 (2d Cir. 1975) .................................................................12, 19, 20

*Fuges v. Southwest Fin. Servs., Ltd.,*
  707 F.3d 241 (3d Cir. 2012) ...................................................................... 5, 10

*Grabein v. Jupiterimages Corp.,*
  2008 U.S. Dist. LEXIS 65828 (S.D. Fla. Jul. 7, 2008) ...............................21

*Hammer v. Sam's Club East, Inc.,*
  2014 U.S. App. LEXIS 10452, *21 (8th Cir. Jun. 5, 2014) ...................passim

*Havens Realty Corp. v. Coleman,*
  455 U.S. 363 (1982) .....................................................................................19

*Hinterberger v. Catholic Health Sys.,*
  536 Fed. Appx. 14 (2d Cir. 2013) ...............................................................16

*Jones v. Experian Info. Solutions, Inc.,*
  982 F. Supp. 2d 268 (S.D.N.Y. 2013)..........................................................19

*Katz v. ABP Corp.,*
  2013 U.S. Dist. LEXIS 78476 (E.D.N.Y. Jun. 4, 2013) ............................ 7, 10

*Kendall v. Employees Ret. Plan of Avon Prods.,*
  561 F.3d 112 (2d Cir 2009) ..................................................................... 13, 14

*Killingsworth v. HSBC Bank Nev., N.A.,*
  507 F.3d 614 (7th Cir. 2007)........................................................................17

*Komorowski v. All-American Indoor Sports, Inc.,*
  2013 U.S. Dist. LEXIS 125747 (D. Kan. Sept. 4, 2013) ..............................12

*Korman v. Walking Co.,*
  503 F. Supp. 2d 755 (E.D. Pa. 2007)............................................................14

*Kubas v. Std. Parking Corp. IL,*
  594 F. Supp. 2d 1029 (N.D. Ill. 2009)..................................................6, 11, 12

*Latino Officers Ass'n v. City of New York,*
  2003 U.S. Dist. LEXIS 10057 (S.D.N.Y. June 17, 2003) ............................16

*Lavery v. Radioshack Corp.,*
  2014 U.S. Dist. LEXIS 85190 (N.D. Ill. Jun. 23, 2014) ......................6, 10, 12

*Liberty Mut. Ins. Co. v. Wetzel,*
  424 U.S. 737 (1976).......................................................................................18

*Linda R. S. v. Richard D.,*
  410 U.S. 614 (1973).......................................................................................19

*Long v. Tommy Hilfiger U.S.A., Inc.,*
  671 F.3d 371 (3d Cir. 2012)................................................................9, 15, 17

*Longman v. Wachovia Bank, N.A.,*
  702 F.3d 148 (2d Cir. 2012)..........................................................................18

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.,*
    94 F. Supp. 2d 474 (S.D.N.Y. 2000)................................................................16

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992)..........................................................................................19

*Marbury v. Madison,*
    5 U.S. 137 (1803)..............................................................................................12

*Mortimer v. Bank of Am., N.A.,*
    2013 U.S. Dist. LEXIS 51877 (N.D. Cal. Apr. 10, 2013) ...............................17

*Murray v. GMAC Mortg. Corp.,*
    434 F.3d 948 (7th Cir. 2006)............................................................................17

*Murray v. New Cingular Wireless Servs.,*
    523 F.3d 719 (7th Cir. 2008).......................................................................5, 11

*Nash v. Califano,*
    613 F.2d 10 (2d Cir. 1980) ...............................................................................19

*Nicaj v. Shoe Carnival, Inc.,*
    2014 U.S. Dist. LEXIS 5453 (N.D. Ill. Jan. 16, 2014) .....................................9

*Northrop v. Hoffman of Simsbury, Inc.,*
    12 F. Appx. 44 (2d Cir. 2001)....................................................................16, 17

*NRDC, Inc. v. United States FDA,*
    710 F.3d 71 (2d Cir. 2013);..............................................................................20

*Pacheco v. Park South Hotel, LLC,*
    29 Am. Disabilities Cas. (BNA) 378  (S.D.N.Y. Jan. 27, 2014)........................2

*Perl v. Plains Commerce Bank,*
    2012 U.S. Dist. LEXIS 32656 (S.D.N.Y. Mar. 8, 2012) ...................................9

*Petway v. New York City Transit Auth.,*
    450 Fed. Appx. 66 (2d Cir. 2011) ....................................................................16

*Ragin v. Harry Macklowe Real Estate Co.,*
    F.3d 898 (2003).................................................................................................19

*Ramirez v. Midwest Airlines, Inc.,*
    537 F. Supp. 2d 1161 (D. Kans. 2008).............................................................14

*Ritchie v. N. Leasing Sys., Inc.,*
    2014 U.S. Dist. LEXIS 44045 (S.D.N.Y. Mar. 31, 2014) ................................17

*Romano v. Active Network Inc.,*
    2009 U.S. Dist. LEXIS 78983 (N.D. Ill. Sep. 3, 2009) ...................................12

*Rosenthal v. Lonchamp Coral Gables LLC,*
    2009 U.S. Dist. LEXIS 59084 (D. Fla. Jun. 2009)...........................................11

*Safeco Insurance Co. of America v. Burr,*
    551 U.S. 47 (2007)......................................................................................passim

*Sanders v. W&W Wholesale, Inc.*,
  2011 U.S. Dist. LEXIS 117860 (N.D. Ill., Oct. 12, 2011).........................................11, 12

*Seamans v. Temple Univ.*,
  744 F.3d 853 (3d Cir. 2014) .................................................................................5, 7, 10

*Slaymon v. SLM Corp.*,
  506 Fed. Appx. 61 (2d Dep't 2012)....................................................................................16

*Smith v. LexisNexis Risk Solutions, Inc.*,
  2014 U.S. Dist. LEXIS 27884 (N.D. Ill. Mar. 5, 2014) ......................................................17

*Starkey v. Experian Info. Solutions, Inc.*,
  2014 U.S. Dist. LEXIS 107917 (C.D. Cal. Jan. 8, 2014) ...............................................7, 12

*Steel Co. v. Citizens for a Better Env't*,
  523 U.S. 83 (1998)..............................................................................................................20

*Summers v. Earth Island Ins.*,
  555 U.S. 488 (2009)............................................................................................................20

*Todd v. Target Corp.*
  2012 U.S. Dist. LEXIS 44362
   (N.D. Ill. Mar. 30, 2012) ...................................................................................................15

*Trafficante v. Metropolitan Life Ins. Co.*,
  409 U.S. 205 (1972)............................................................................................................19

*Trans World Airlines, Inc. v. Thurston*,
  469 U.S. 111 (1985)..........................................................................................................7, 8

*Troy v. Home Run Inn, Inc.*,
  2008 U.S. Dist. LEXIS 30038 (N.D. Ill. Apr. 14, 2008).....................................................11

*TRW Inc. v. Andrews*,
  534 U.S. 19 (2001)..............................................................................................................16

*United States v. Bormes*,
  133 S. Ct. 12 (2012)........................................................................................................5, 18

*United States v. Students Challenging Regulatory Agency Procedures*,
  412 U.S. 669 (1973)......................................................................................................14, 20

*Valley Forge Christian College v. Americans United for Separation of Church & State*,
  454 U.S. 464 (1982)............................................................................................................21

*Warth v. Seldin*,
  422 U.S. 490 (1975)............................................................................................................19

*Weitz v. Wagner*,
  2009 U.S. Dist. LEXIS 110220 (E.D.N.Y Nov. 24, 2009) ..................................................18

*Zaun v. Tuttle, Inc.*,
  2011 U.S. Dist. LEXIS 47916 (D. Minn. May 4, 2011).......................................................11

**Statutes**

Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565 ...........3, 11

Fair and Accurate Credit Transactions Act ("FACTA") .................................................................passim

Fair Credit Reporting Act ("FCRA").........................................................................................6

**Constitution**

U.S. Constitution, Article III..................................................................................................passim

**Rules**

Fed. R. Civ. P. 12(h)(3)...............................................................................................................18

Fed.R.Civ.P.,Rule 9(b).............................................................................................................4, 9

S.D.N.Y. Local Rule 32.1.1........................................................................................................16

**Other Authorities**

147 Cong. Rec. S.9078 (Sep. 4, 2001) .....................................................................................21

149 Cong. Rec. S.1669 (Jan. 28, 2003) ....................................................................................21

149 Cong. Rec. S.13861 (Nov. 4, 2003).....................................................................................3

154 Cong. Rec. H00000-29 (May 13, 2008) .......................................................................17, 21

Carroll, Lewis, *Through the Looking-Glass*,
   ch. 6 at 106-09 (Schocken Books 1987) (1872) ....................................................................8

Federal Trade Commission, "Slip Showing? Federal Law Requires All Businesses to
   Truncate Credit Card Information on Receipts" (May 2007) ................................................4

President at Signing of the Fair and Accurate Credit Transactions Act., 2 Pub. Papers 1676
   (Dec. 4, 2003)......................................................................................................................21

RULES FOR VISA MERCHANTS—CARD ACCEPTANCE AND CHARGEBACK MANAGEMENT
   GUIDELINES, at 17 (2006) ................................................................................................3, 4

Sunstein, Cas R., *What's Standing After* Lujan*? Of Citizen Suits, "Injuries," and Article III*, 91
   MICH. L. REV. 163 (1992) .................................................................................................19

The Fair Credit Reporting Act and Issues Presented by Reauthorization of the Expiring
   Preemption Provisions, Before the Comm. on Banking, Housing and Urban Affairs,
   108th Cong., 78 (2003).......................................................................................................21

## INTRODUCTION

Defendants (hereinafter collectively referred to as "Defendants," "Donna Karan" or "DK") do not and cannot dispute that the Fair and Accurate Credit Transactions Act ("FACTA"), 15 U.S.C. § 1681c(g)(1), specifically provides that "…no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number . . .  upon any receipt provided to the cardholder at the point of sale or transaction," as pleaded in the First Amended Complaint  ("Complaint," "FAC"). (Dkt. 20, ¶ 58)  Nor do they dispute that Plaintiff was given a customer copy of a computer-generated cash register receipt that contained not only the permitted last digits, but also the first six digits of Plaintiff's credit card.   Despite DK's claims, this is not "substantial" or "partial compliance" with the statute, as DK seeks to establish by repetition. (Dkt. No. 32 at 2, 4, 8, 9, 16)  Printing exactly what the statute commands shall not be printed is a direct violation of the statute, pure and simple.

This statutory violation, by its very nature, fully meets both prongs of the Supreme Court's "objective standard" for alleging willful or reckless conduct under 15 U.S.C. § 1681n articulated in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007):

> [T]he action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

551 U.S. at 69.

Unsurprisingly, DK does not claim that printing the digits which the statute prohibits is or can be justified by any statutory "reading that was merely careless" *id.*,  given the crystal clear, ten-year old, widely publicized, authoritatively construed truncation requirement in FACTA. Thus, under *Safeco*, when DK programmed or permitting its company-wide computer systems to be

programmed to do exactly what the statute commanded it not to do, it ran a 100% "risk of violating the law." Under *Safeco* itself, there can be no clearer instance of recklessness.

The objective nature of the *Safeco* test renders DK's elaborately argued protestations of good faith irrelevant at the pleading stage. Remarkably, DK's opposition manages to invoke *Safeco* itself in support of the idea that pleading a "willful" violation of FACTA requires allegations that the prohibited conduct entailed a "knowing" or "deliberate" violation, involving a conscious "choice" to ignore the statutory command (Dkt. No. 32 at 9-10) – a notion which is recycled throughout the memorandum in opposition. (Dkt. No. 32 at 2, 9, 10, 10-12, 16)  This contention is inexplicable, in that the Supreme Court in *Safeco* expressly (and on this point unanimously) rejected it.  555 U.S. at 56-57 ("[Petitioners] argue that liability under § 1681n(a) . . . goes only to acts known to violate the Act, not to reckless disregard of statutory duty, but we think they are wrong.");  555 U.S. at 68-69 nn. 18, 20 (rejecting any consideration of defendant's subjective state of mind).

DK's fallback positions offer a tortured and illogical misreading of the statutory language, conflating the statute's distinct alternative actual and statutory damages concepts, purportedly to sidestep a manufactured Article III standing issue which has met with universal rejection from the courts.  As demonstrated *infra*, these contentions are without substance and should be rejected.  In expressly conferring standing upon persons in plaintiff's situation, Congress acted entirely within its Constitutional authority.  Under the statute and the Constitution, Mr. Katz has standing and this Court has jurisdiction.

I.     **The First Amended Complaint Sets Forth More than Sufficient Factual Allegations Plausibly Pleading That Defendants' Admitted Statutory Violations Were Reckless.**

The factual allegations of the First Amended Complaint (Dkt. No. 20) must be accepted as true and construed most favorably to plaintiff.  *E.g., Pacheco v. Park South Hotel, LLC*, 29 Am.

Disabilities Cas. (BNA) 378 (S.D.N.Y. Jan. 27, 2014) and cases cited. Those allegations set forth, *inter alia*, the following material averments:

Defendants own and operate a major nationwide retail business that regularly accepts credit cards, including VISA, MasterCard, American Express and Discover, for consumer purchases. (Dkt. No. 20 at ¶ 43)  In 2006 they agreed by contract with Visa to print no more than the last four digits of a Visa credit card number on receipts, and, effective July 1, 2006, to omit the expiration date entirely.  *See* RULES FOR VISA MERCHANTS—CARD ACCEPTANCE AND CHARGEBACK MANAGEMENT GUIDELINES, at 17 (2006)[1]; *see also Buechler v. Keyco, Inc.*, 2010 U.S. Dist. LEXIS 40197, *3 n.2 (D. Md. Apr. 22, 2010).  The Complaint specifically alleges that other card issuers explicitly informed Donna Karan of these requirements, that Donna Karan was aware of them and contractually obligated itself to abide by them.  *See* Dkt. No. 20 at ¶ 44, 46-48.

After the well-publicized passage of FACTA in 2003,[2] merchants had three years to comply with the requirements before the Act took effect.  During this phase-in period Donna Karan was apprised many times of the Act's truncation requirement.  For instance, trade groups and retail trade associations to which DK belongs informed members, including the DK, of the truncation requirement.  *See* Dkt. No. 20 at ¶ 54.

---

[1] FACTA was very publicly supported and passed.  In March of 2003, Visa Inc., spearheaded a private-sector "account truncation program" requiring merchants who accepted Visa cards to omit certain sensitive cardholder information from customer receipts.  VISA's CEO held press conferences with Senators Gregg, Leahy and  Feinstein announcing this program and supporting legislation that eventually became FACTA.  Even before the statute went into effect, Visa required all new merchant terminals using the Visa system to truncate credit card receipts, and would soon require all merchants accepting Visa cards to do so.  149 Cong. Rec. S13861 (daily ed. Nov. 4, 2003) (statement of Sen. Feinstein).

[2] The publicity surrounding the passage of FACTA is statutorily recognized.  *See* 15 U.S.C.§ 1681n note, enacted by the Credit and Debit Card Receipt Clarification Act of 2007, Pub. L. 110-241, 122 Stat. 1565; *see also Buechler v. Keyco, Inc.*, 2010 U.S. Dist. LEXIS 40197, *4 (D. Md. Apr. 22, 2010) (recognizing the "well-publicized passage of FACTA").

DK was further admonished to comply with FACTA by the PCI Security Standards Council, cash register companies, credit card processing companies, and other entities. *See* Dkt. No. 20 at ¶ 45. Specifically, AllianceData, a credit card processor, issued a bulletin dated June 14, 2006, that FACTA and Visa rules required the truncation of all but the last five digits of customers' credit card numbers. *See* Dkt. No. 20 at ¶ 53. Further, the Federal Trade Commission in May 2007 issued a business alert entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit Card Information on Receipts." *See* Dkt. No. 20 at ¶ 55.

The First Amended Complaint (Dkt. No. 20) alleges that Defendant Donna Karan specifically "received and understood" every one of these warnings (*id.* at ¶¶ 48, 52, 54, 61) and had actual knowledge of its obligation to comply with FACTA (*id.* at ¶ 46), yet allowed the issuance of illegal receipts at its stores. The Complaint further alleges, on information and belief, that the receipt provided to Mr. Katz on February 2 of this year was not an isolated occurrence, but reflected uniform hardware/software issues which were potentially spewing out documents in violation of the statute at rates of thousands per week on a nationwide basis. (*Id.* at ¶¶ 31-42) Thus, eleven years after the passage of FACTA, and eight years after the Act took effect, and at least eight years since it contractually agreed to comply, on February 2, 2014, Donna Karan was printing receipts showing "more than the last 5 digits" of customers' credit card numbers, including but not limited to the Katz receipt, in reckless violation of FACTA. As noted above, no reasonable reading of 15 U.S.C. § 1681g(c)(1) can be offered to legalize doing exactly what the statute prohibits. In light of the specific facts alleged in the complaint, the inference that Defendants' violation was reckless is not merely "plausible" under *Twombly/Iqbal*, but virtually inescapable. Indeed, though Plaintiff is under no obligation to do so, he has arguably alleged a consciously knowing violation of the statute. The "who, what where" details set forth are the antithesis of "conclusory" allegations, so much so that they would suffice under the particularity standard provided in Rule 9(b), Fed.R.Civ.P. Coupled

with the complete absence of any defensible construction of 15 U.S.C. § 1681g(c)(1) which would

allow the statutorily prohibited digits to appear on any customer receipt, the FAC more than

adequately alleges wilful, *i.e.* reckless, conduct within the meaning of 15 U.S.C. § 1681n, as

interpreted by *Safeco*.

## II.   Recklessness Sufficient to Establish a "Willful" Violation Under FACTA, As With Other Civil Statutes, Has No Subjective Component, But May Be Plausibly Alleged Based on Objective Facts, As Plaintiff Has Done Here.

FACTA "creates a detailed remedial scheme [which] set[s] out a carefully circumscribed,

time-limited, plaintiff-specific cause of action, and also precisely define[s] the appropriate forum."

*United States v. Bormes*, 133 S. Ct. 12, 19 (2012).  The statute "authorizes aggrieved consumers to hold

any person who willfully…fails to comply with the Act's requirements liable for specified

damages…and jurisdiction will lie in any appropriate United States district court…"  *Id.*

Donna Karan contends that the Complaint fails to allege that it "willfully fail[ed] to comply"

with the truncation requirement.  As set forth above, the Complaint more than adequately alleges

the requisite reckless violation of the statute.  The Supreme Court has explained that although

§ 1681n uses the term "wilful," a "reckless disregard of a requirement of [the Act] would qualify as a

wilful violation."  *Safeco*, 551 U.S. at 71.   An actor's subjective bad faith is irrelevant in the

assessment of willfulness or recklessness, because the central inquiry here focuses on objective

reasonableness.  551 U.S. at 69; *Hammer v. Sam's Club East, Inc.*, 2014 U.S. App. LEXIS 10452, *21

(8th Cir. Jun. 5, 2014); *Seamans v. Temple Univ.*, 744 F.3d 853, 868 (3d Cir. 2014); *Fuges v. Southwest Fin.

Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012).

"Reckless" under *Safeco*'s standard means "something more than negligence."  *Murray v. New

Cingular Wireless Servs.*, 523 F.3d 719, 725-6 (7th Cir. 2008).  That is, recklessness here is the violation

of an objective standard entailing "an unjustifiably high risk" of violating the law which the

defendant either knew or is "so obvious" that they should have known, in light of standards that

5

were "established" at the time. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-9 (2007); *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d at 248-49; *Lavery v. Radioshack Corp.*, 2014 U.S. Dist. LEXIS 85190 (N.D. Ill. Jun. 23, 2014).

In this case, Donna Karan admits to printing the receipt exhibited with the complaint, which on its face contains the very digits which 15 U.S.C. § 1681g(c)(1) expressly prohibits, thus violating a clear, unambiguous standard.   The Complaint alleges, in detail, how and when DK was apprised of this requirement, foreclosing any contention that it did not or could not know of the truncation requirement, and establishing that DK ran a 100% "risk of violation" by acting as it did.   At the pleading stage, the Complaint's allegations are more than sufficient to plead recklessness.

The Supreme Court in *Safeco* also provided a threshold defense for good-faith misinterpretation of the statute: "a company subject to FCRA [or the FACTA amendments to FCRA] does not act in reckless disregard of it unless the action is not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Id.* at 69. Thus, "even if a court disagrees with a party's interpretation of FACTA it may not impose liability unless the party has interpreted the statute in an objectively unreasonably manner." *See Hammer v. Sam's Club East, Inc.*, 2014 U.S. App. LEXIS 10452 at *21-22.  No such defense is available here, and DK does not even attempt to assert it.  Simply put, the statutory text, phrased in prohibitory terms ("no person shall" issue a receipt printing prohibited information), is not susceptible of even a "careless reading" under which one can engage in the conduct which the statutory text forbids. "The plain language of the statute has only one reasonable meaning: It unambiguously prohibits a person from printing more than the last five digits of a credit card on a receipt…." *Kubas v. Std. Parking Corp. IL*, 594 F. Supp. 2d 1029, 1032 (N.D. Ill. 2009).  Defendant's complete inability  to offer a "merely careless" reading of the statute under which expressly prohibited acts can become

permitted raises at least a jury issue as to recklessness, and establishes, as a matter of law, that the FAC has pleaded recklessness adequately.  *See Seamans v. Temple Univ.,* 744 F.3d at 868-89; *Avila v. NOW Health Group, Inc.,* 2014 U.S. Dist. LEXIS 99178, *8-9 (N.D. Ill. Jul. 17, 2014); *Starkey v. Experian Info. Solutions, Inc.,* 2014 U.S. Dist. LEXIS 107917, *13 (C.D. Cal. Jan. 8, 2014);  *Katz v. ABP Corp.,* 2013 U.S. Dist. LEXIS 78476, *8 (E.D.N.Y. Jun. 4, 2013).

DK appears to recognize that, absent any reading of the statute which would justify its conduct, it has no hope of invoking the *Safeco* "merely careless reading" defense.  Instead, DK claims that only allegations of actual knowledge involving some sort of deliberation or conscious choice to violate the statute will suffice.   (Dkt. No. 32 at 9-11)   In support, DK crafts an elaborate but fundamentally specious argument which on its face purports to derive this proposition from *Safeco* itself, notwithstanding the Supreme Court's express finding that the notion that 15 U.S.C. § 1681n(a) "goes only to acts known to violate the Act" is "wrong."  551 U.S. at 56-57.

This adventure in creative legal argument begins with the final sentence on p. 9 of DK's memorandum in opposition (Dkt. No. 32), which makes the unremarkable statement that "[w]illful conduct under § 1681n(a) can be shown by reckless disregard or a knowing violation.  [*Safeco*, 551 U.S. at 52]."  With no more than passing reference in the next paragraph, S*afeco* itself is then cast adrift, in favor of DK's own gloss on the Restatement of Torts, a source to which the Supreme Court looked in *Safeco*.  By applying the Restatement not as the *Safeco* Court did, but to its own satisfaction, DK derives a non-existent requirement of deliberation or conscious choice wholly at odds with the definition of recklessness articulated by the Supreme Court.  DK then veers off into an extended discussion of *Trans World Airlines, Inc. v. Thurston,* 469 U.S. 111 (1985), a decision touted as critical to the outcome in *Safeco*, but bereft of any citation to *Safeco*'s treatment of it.  (Dkt. No. 32 at 10-11)  In fact, *Safeco* cites *Thurston* exactly once, midway through a string citation of decisions

demonstrating that in the civil sphere, the Supreme Court has consistently construed statutory references to "wilfull" as encompassing recklessness.

Safeco looks to Thurston only for its own central proposition – "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well." Safeco, 551 U.S. at 57, citing Thurston, 469 U.S. at 125-26. Tellingly, DK never cites or discusses the passage in Thurston cited in Safeco, but looks anywhere else in the case in support of its contention that a plaintiff proceeding under FACTA must plead the precise state of mind under which the defendant consciously chose to proceed in knowing violation of a federal statutory prohibition.  This is neither the holding in Safeco, nor even the proposition for which Safeco cites Thurston.  In any event, Thurston itself, which arose post-trial, has little if anything to teach regarding pleading standards.

Lastly, Defendants would appear to be actually contending that their direct violation of the statutory command not to print more than the last five digits of a card number constitutes some sort of "substantial" or "partial compliance" – a concept to which they turn repeatedly.   (Dkt. No. 32 at 2, 4, 8, 9, 16)   Such Alice in Wonderland logic – under which driving 90 mph could be termed "substantial" or "partial compliance" with a 60 mph speed limit – is self-evident nonsense and therefore an objectively unreasonable reading of the statute within the meaning of Safeco.[3]

With all respect, cases such as Crupar-Weinmann v. Paris Baguette Am., Inc., 2014 U.S. Dist. LEXIS 91119 (S.D.N.Y. Jun. 30, 2014), insosfar as they may be factually apposite, misapply Safeco by substituting a requirement of subjective knowledge and purposeful violation for the "objectively

---

[3] See, Lewis Carroll, Through the Looking-Glass, ch. 6 at 106-09 (Schocken Books 1987)(1872) quoted in Connecticut Fishermen's Ass'n v. Remington Arms Co., Inc., 989 F.2d 1305, 1308 (2d Cir. 1993)

> "When I use a word," Humpty Dumpty said, in rather a scornful tone, "it means just what I choose it to mean – neither more nor less."
> "The question is," said Alice, "whether you can make words mean so many different things."
> "The question is," said Humpty Dumpty, "which is to be master – that's all."

(Emphasis original)

unreasonable" standard imposed by the Supreme Court. *Perl v. Plains Commerce Bank*, 2012 U.S. Dist. LEXIS 32656 (S.D.N.Y. Mar. 8, 2012) is similarly in error, requiring the plaintiff to plead "that defendant's state of mind was willful" notwithstanding the fact that *Safeco* explicitly rejected consideration of the defendant's subjective state of mind, *see Safeco* at 68-69 nn. 18, 20, and that, in any case, defendant's state of mind may be averred generally, *see* FED. R. CIV. P. 9(b); *see also Avila v. NOW Health Group, Inc.,* 2014 U.S. Dist. LEXIS 99178 at *8-9. Moreover, to the extent that the cases Defendants cite predate *Safeco*, or relate to different statutes other than the one at issue in this case, they are clearly inapplicable. *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371 (3d Cir. 2012) and *Nicaj v. Shoe Carnival, Inc.*, 2014 U.S. Dist. LEXIS 5453 (N.D. Ill. Jan. 16, 2014), relied on by Defendants, applied *Safeco* to FACTA provisions other than the truncation requirement in § 1681c(g)(1), which, unlike the truncation requirement, could reasonably be interpreted to allow the challenged conduct.

   Defendants further mischaracterize recklessness as entailing a risk of identity theft. Defendant's argument misses the point. The statute at issue however requires a showing that the defendant wilfully/recklessly "fails to comply" with the truncation requirement. § 1681n. "Recklessness" here is not conduct that unjustifiably risks having the customer's identity stolen, but one that is an unjustifiable "disregard of the requirement of" the Act. *Safeco,* 551 U.S. at 71. The Complaint adequately alleges that Defendants should have known of the requirements, had ample notice and opportunity to comply, but adopted a prohibited course of conduct instead.[4]

   Defendants' final refuge is to dismiss the numerous allegations specific to Donna Karan as somehow "conclusory." This contention is difficult to take seriously. Under *Safeco's* objective

---

[4] In any event, once this case has reached the merits stage, Plaintiff's counsel expects that the evidence will show that each additional printed digit beyond the last five permitted by FACTA incrementally increases a card number's vulnerability to cryptologic attack, due to the fact that the permitted digits include a single digit "checksum" mathematically derived from the other digits according to various well-known formulas.

standard for recklessness, courts are directed to "the text of the statute, case law that existed…any agency interpretations" and other "authoritative guidance," such as industry standards, which would guide an objectively reasonable actor's conduct.  *See Seamans v. Temple Univ.*, 744 F.3d 853 at 868-9; *Hammer v. Sam's Club East, Inc.*, 2014 U.S. App. LEXIS 10452 at *20-22; *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d at 251-253.  To this end, Plaintiff has pled the objective standard in existence, in this case the unambiguous statute itself, that DK was directly and indirectly informed of this standard, that DK knew and understood this standard, or otherwise that the requirement was so obvious that it should have known, that DK had over a decade to comply prior to the violation alleged in and attached as an Exhibit to the complaint, and could have easily and cheaply done so, but did not.  *See* Dkt. No. 20 at ¶ 6, 36, 38, 41, 44, 45, 46 47, 48, 49, 50, 51, 52, 53, 54, 55, 56, 57, 61, 62.  Moreover, the Complaint alleges that Donna Karan is a nationwide retailer, and as such, the receipt and processing of consumer credit card transactions is necessarily a major aspect of their business.  *See* Dkt. No. 20 at ¶ 32, 35, 37.  Plaintiff alleges that DK uses point-of-sale registers, programs the software on the registers, and regularly communicates and contracts with credit card companies, such that it is and has been actively involved in the conduct at the heart of this lawsuit.  Dkt. No. 20 at ¶ 27, 31, 36, 45, 46, 47, 48, 49, 50, 51, 52, 53.

This alone distinguishes cases where printing of receipts is tangential to a company's business, such as a local minor league baseball team, or where the plaintiff simply pleads the existence of the statute and printing of the receipt.  Plaintiffs alleges much more than that— allegations that courts all over the country have time and again held sufficient to survive dismissal. *See, e.g., Lavery v. Radioshack Corp.*, 2014 U.S. Dist. LEXIS 85190 at *5-9 (major national retailer knew of FACTA requirements because of its publicity, and that it was advised and contractually required to comply by associations, acquirers and issuers, and had three years to comply); *Katz v. ABP Corp.*, 2013 U.S. Dist. LEXIS 78476 at *8 (cash register maintained, programmed and operated by or at the

request of defendant); *Sanders v. W&W Wholesale, Inc.*, 2011 U.S. Dist. LEXIS 117860, *5-7 (N.D. Ill., Oct. 12, 2011); *Zaun v. Tuttle, Inc.*, 2011 U.S. Dist. LEXIS 47916 (D. Minn. May 4, 2011) (publicity surrounding enactment, trade association warnings); *Buechler v. Keyco, Inc.*, 2010 U.S. Dist. LEXIS 40197, *6-11 (D. Md. Apr. 22, 2010) (well-publicized enactment of FACTA, FTC guidance, the Clarification Act, private sector requirements, and compliance by competitors, plausibly alleged willful violation); *Kubas v. Standard Parking Corp. IL*, 594 F. Supp. 2d at 1031-32 (defendant was informed by card issuers who required compliance, peers were in compliance, defendant had three years to comply); *Rosenthal v. Lonchamp Coral Gables LLC*, 2009 U.S. Dist. LEXIS 59084 (D. Fla. Jun. 2009) (allegation that defendant received notice of FACTA's requirements from a bank made willfulness plausible); *Troy v. Home Run Inn, Inc.*, 2008 U.S. Dist. LEXIS 30038 (N.D. Ill. Apr. 14, 2008) (three years to comply, Visa informed defendant of requirements and contractually required compliance, FACTA was widely publicized, competitors were in compliance).

Defendants concede that the Complaint adequately alleges negligence, but aver that the allegations are not enough to raise a triable issue as to recklessness. This makes no sense, the distinction between negligence, gross negligence, recklessness, and a knowing violation is a matter of degree, so that a pleading which demonstrates negligence – which Defendant admits – necessarily raises a triable issue as to recklessness, and at the very least cannot be dismissed before discovery. *See Murray v. New Cingular Wireless Servs.*, 523 F.3d 719, 725-6 (7th Cir. 2008) (under *Safeco*, "recklessness [means] something more than negligence but less than knowledge of the law's requirements."); *Avila v. NOW Health Group, Inc.*, 2014 U.S. Dist. LEXIS 99178 at *7-8; *Rosenthal v. Lonchamp Coral Gables LLC*, 2009 U.S. Dist. LEXIS 59084, *5-6 (D. Fla. Jun. 2009); *cf. also Buchok v. J.C. Penney Corp.*, 2010 U.S. Dist. LEXIS 75134, *4-6 (D. Conn. July 26, 2010) (whether defendant acted negligently or recklessly cannot be decided on a motion to dismiss). A court at this juncture would be usurping the role of finder of fact if it determined on a motion to dismiss that, as a matter

of law, defendants conduct was negligent, but not reckless, as the court impermissibly did in *Komorowski v. All-American Indoor Sports, Inc.*, 2013 U.S. Dist. LEXIS 125747 (D. Kan. Sept. 4, 2013). Willfulness under FACTA cannot be decided at the pleading stage. *See Lavery v. Radioshack Corp.*, 2014 U.S. Dist. LEXIS 85190, *5-9 (N.D. Ill. Jun. 23, 2014); *Starkey v. Experian Info. Solutions, Inc.*, 2014 U.S. Dist. LEXIS 107917 at *13-14 ("willfulness under the FCRA is generally a question for fact for the jury." (alterations omitted)); *Sanders v. W&W Wholesale, Inc.*, 2011 U.S. Dist. LEXIS 117860 at *7; *Kubas v. Standard Parking Corp. IL*, *supra*; *Romano v. Active Network Inc.*, 2009 U.S. Dist. LEXIS 78983, *9-11 (N.D. Ill. Sep. 3, 2009).  Thus Defendant's motion must be denied.

### III.    Plaintiff Has Statutory and Constitutional Standing to a Congressionally Authorized and Defined Claim in this Court .

Congress, through statute, has the power to create rights and provide remedies for violation of those rights.  *See Evans v. Lynn*, 537 F.2d 571, 579 (2d Cir. 1975) ("where Congress has created a duty, Congress can declare that anyone aggrieved can enforce the corollary right.").  It is elemental that a right, arising from statute or otherwise, when violated, may be vindicated through actions at law.  *See Marbury v. Madison*, 5 U.S. 137, 163 (1803) ("it is a general and indisputable rule, that where there is a legal right, there is also a legal remedy by suit or action at law, whenever that right is invaded.").  FACTA provides consumers with certain rights, details when these rights are violated, provides money awards for certain violations, and vests courts with jurisdiction to adjudicate such claims.  Defendants now claim that the remedial scheme enacted by Congress is unconstitutional because the invasion envisioned by the statute is not "injury" enough to confer standing under Article III, or conversely that the statute should be construed against its plain meaning and simple common sense in order to avoid the Constitutional issue.  Neither prong of this argument survives even cursory scrutiny.

### a.   Statutory standing

With respect to statutory rights, the threshold standing inquiry is simple: "the standing question is determined by whether the…statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *E.M. v. New York City Dep't of Educ.*, 2014 U.S. App. LEXIS 13257, *17-18 (2d Cir. Jul. 11, 2014); *Donoghue v. Bulldog Investors Gen. P'ship,* 696 F.3d 170, 178 (2d Cir. 2012) ("where…a plaintiff's claim of injury in fact depends on legal rights conferred by statute, it is the particular statute and the rights it conveys that guide the standing determination."). *Donoghue* is particularly instructive.  The Securities Exchange Act provides that profits realized from certain prohibited such short-swing trading of stocks shall be recovered by the corporation that issued the stock.  The defendant hedge fund argued that there was no insider trading (the target of the statute) and its open market trading in no way harmed the corporation, as there was no deprivation, no breach of fiduciary duty, no issue of corporate opportunity, breach of contract, or misappropriation.  The Circuit made short work of these arguments, holding that violation of the rights conferred by statute on issuers of stock was itself an injury sufficient to constitute standing, making the profits realized by the illicit trading recoverable without any further showing of harm.

This Second Circuit analysis is re-confirmed by *Kendall v. Employees Ret. Plan of Avon Prods.*, 561 F.3d 112 (2d Cir 2009), the case on which Defendants mistakenly rely.  Following the well-settled proposition that the "injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing," *id.* at 118,  the Circuit focused on "whether the…statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Id.*  In full accord with *Donoghue*, *Kendall* held that liability could properly be founded on "some injury or deprivation of a right, even if that right is statutorily created." *Id.* at 119.  *Kendall* ruled that ERISA did not confer on the plan participant a

13

right to sue for a fiduciary duty plaintiff claims was breached.  *Id.* at 120.  Kendall makes clear,

however, that if the statute had conferred such a right, plaintiff would have had standing.

The FACTA provisions at issue clearly create standing under *Donoghue* and *Kendall*.  They

impose a duty on merchants, and confer a concomitant right on consumers.  Courts have declared

time and again that "[b]y enacting…§ 1681c(g), Congress gave consumers the legal right to obtain a

receipt at the point of sale showing no more than the last five digits of the consumer's credit or

debit card number." *Hammer v. Sam's Club East, Inc.*, 2014 U.S. App. LEXIS 10452 at *12-13; *Engel v.

Scully & Scully, Inc.*, 279 F.R.D. 117, 124 (S.D.N.Y. 2011); *Armes v. Sogro, Inc.*, 932 F. Supp. 2d 931,

938 (E.D. Wis. 2013) ("Through FACTA, Congress created a legal right to electronically printed

receipts that truncate the consumer's credit card number. Receiving a receipt that fails to truncate

the card number violates this legally protected right, which results in an injury sufficient to confer

standing under Article III."); *Ramirez v. Midwest Airlines, Inc.*, 537 F. Supp. 2d 1161 (D. Kans. 2008)

(supporting the "unanimous view on this issue" that "FACTA conferred upon plaintiff the legal

right to receive a point-of-sale receipt from [defendant] with the expiration date on her credit card

omitted"); *Korman v. Walking Co.*, 503 F. Supp. 2d 755, 759 (E.D. Pa. 2007).  Some courts have

categorized this as a type of privacy right.  *See Creative Hospitality Ventures, Inc. v. United States Liab. Ins.

Co.*, 655 F. Supp. 2d 1316, 1334 (S.D. Fla. 2009) ("Congress, at the very least, recognized a card

holder's right of privacy in the card  holder's complete card account number and account

information, and a corresponding right of privacy not to have that information exposed on an

electronically printed payment card receipt").  Though they belittle the right to receive a conforming

receipt as rather petty or unimportant, Defendants proffer no argument why invasion of this right is

insufficient to confer standing,.  They cannot do so because "identifiable trifle is enough for

standing." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14

(1973).  The requirements of causation and redressability are easily met.  *See  Beaudry v. TeleCheck*

*Servs.*, 579 F.3d 702 (6th Cir. 2009).  Simply put, Congress has created a right, conferred that right on consumers, provided consumers deprived of that right a cause of action, defined how to calculate a damage award and vested federal courts with jurisdiction to enforce these claims.  This court has jurisdiction to hear this suit and thus DK's motion to dismiss must be denied.

By emphatic and strained sophistry, DK insists that FACTA requires actual damages in order to recover.  The statute itself rebuts this claim. Any person who willfully (and under *Safeco* recklessly) violates the truncation requirement "with respect to any consumer is liable to that consumer." 15 U.S.C. §1681n.  Here the statute flatly decrees that willful violators are "liable to that consumer in an amount equal to" either "any actual damages sustained by the consumer" or, alternatively, "damages of not less than $100 and not more than $1,000." *Id.*  See also *Safeco*, 551 U.S. at 59 (FACTA first imposes liability and then in "the details…spell[s] out" the "measure[]" of the amount owed).

> FACTA generally provides for two forms of relief: actual damages and statutory damages. "FACTA imposes civil liability for violations of . . . [§ 1681c(g)(1)], with available remedies depending upon whether the violation was negligent or willful." *Long v. Tommy Hilfiger*, 671 F.3d 371, 2012 U.S. App. LEXIS 1269, 2012 WL 180874 (3d Cir. 2012). If a merchant's violation was only negligent, the plaintiff may recover only actual damages. 15 U.S.C. § 1681o(a)(1). If the violation was willful, however, FACTA allows a plaintiff to recover either actual damages or statutory damages between $100 and $1,000. § 1681n(a)(1)(A). Section 1681n(a) applies to the Fair Credit Reporting Act generally, including FACTA violations.

*Todd v. Target Corp.*, 2012 U.S. Dist. LEXIS 44362 at *14 (N.D. Ill. Mar. 30, 2012)[5]

---

[5] In *Todd v. Target*, the district court, after noting *Safeco's* holding that reckless conduct is sufficient to show willfulness under FACTA, focused on "what the willfulness inquiry does *not* cover. It does not involve an inquiry into how hard the merchant tried to prevent the violation from happening. In other words, neither *Safeco* nor any other case . . . suggests that if it is clear that certain conduct violates . . . FACTA, then the defendant can still avoid a finding of willfulness by showing that the defendant tried hard to prevent its employees from committing the violation." *Id.* at *17. (Emphasis original)

DK seeks to avoid the statute's plain meaning by deliberately conflating "actual damages" with the alternative statutory award of "damages of not less than $100 and not more than $1,000," in effect treating "actual damages" as equivalent to "damages of not less than $100 and not more than $1,000." Nothing about this reading makes sense. A consumer who sustained actual damages (in or out of the range of $100 to $1000) would, under this reading, be entitled to the same compensation under either clause, if both are interpreted to require "actual damages." *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("a statute ought…to be so construed that…no clause, sentence, or word shall be superfluous…"). Moreover, Defendant's reading would to deny FACTA protection under either alternative to consumers who sustain a loss of less than $100. Congress cannot be presumed to have intended the damage provision in FACTA to largely negate itself.[6]

*Northrop v. Hoffman of Simsbury, Inc.*, 12 F. Appx. 44 (2d Cir. 2001) (summary order) and *Doe v. Chao*, 540 U.S. 614 (2004), of which DK seeks to make much, do not even relate to the statutory provision at issue in this case. Moreover, *Northrop* is an unpublished opinion with no precedential value. Not only is DK's statement that "*Northrop* is controlling here" (DKT. NO. 32 at 20) therefore false, but citation to this case is forbidden by Local Rule 32.1.1. Moreover, the failure to indicate that *Northrop* is a summary order violates the Local Rules.[7] *See Angermeir v. Cohen*, 2014 U.S. Dist. LEXIS 42403, *13 n.4 (S.D.N.Y. Mar. 27, 2014); *Latino Officers Ass'n v. City of New York*, 2003 U.S. Dist. LEXIS 10057, *5 n.3 (S.D.N.Y. June 17, 2003); *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading, Inc.*, 94 F. Supp. 2d 474, 475 (S.D.N.Y. 2000). In any case, *Northrop*'s one-sentence

---

[6] *E.g., Nixon v. Mo. Mun. League*, 541 U.S. 125, 138 (2004); *United States v. American Trucking Assns., Inc.*, 310 U.S. 534, 543 (1940). (Court will not construe a statute in a manner that leads to absurd results).

[7] DK cites three additional summary orders without required disclosure, *viz. Slaymon v. SLM Corp.*, 506 Fed. Appx. 61 (2d Dep't 2012) (summary order), *Hinterberger v. Catholic Health Sys.*, 536 Fed. Appx. 14, 16 (2d Cir. 2013) (summary order), and *Petway v. New York City Transit Auth.*, 450 Fed. Appx. 66, 67 (2d Cir. 2011) (summary order).

statement refers to an earlier version of §1681n[8] (the incidents occurred before the 1996 amendment), and turned on a different statutory provision.  Finally, *Northrop* contains no analysis whatsoever supporting Defendant's reading, and, indeed, itself plainly states that "Actual damages are not a statutory prerequisite to punitive damages." *Doe v. Chao*, 540 U.S. 614 (2004) relates to an entirely different statute with an entirely different wording that did not contain the disjunctive "or."

On the other hand, abundant case law supports the plain meaning of the text: that the statute allows alternatively for statutory damages in the absence of pleading actual loss.  *See Hammer v. Sam's Club East, Inc.*, 2014 U.S. App. LEXIS 10452 at *15-16; *Long v. Tommy Hilfiger U.S.A.*, 671 F.3d at 376; *Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 718 (9th Cir. 2010) ("the Fair Credit Reporting Act provide for modest [statutory] damages without proof of injury"); *Beaudry v. TeleCheck Servs.*, 579 F.3d at 705-706 ("Because 'actual damages' represent an alternative form of relief and because the statute permits a recovery when there are no identifiable or measurable actual damages, this subsection implies that a claimant need not suffer (or allege) consequential damages to file a claim."); *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 622 (7th Cir. 2007); *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006); *Ritchie v. N. Leasing Sys., Inc.*, 2014 U.S. Dist. LEXIS 44045, *27 (S.D.N.Y. Mar. 31, 2014) ("the Court will not dismiss Plaintiff's willful-violation claims…for failure to allege actual damages, because even if Plaintiff failed to do so, the Complaint would still state a claim based on entitlement to statutory damages."); *Braun v. Client Servs.*, 2014 U.S. Dist. LEXIS 45624, *18-19 (S.D.N.Y. Mar. 31, 2014) (only when the violation was negligent need the plaintiff allege actual damages); *Smith v. LexisNexis Risk Solutions, Inc.*, 2014 U.S. Dist. LEXIS 27884, *10 (N.D. Ill. Mar. 5, 2014); *Mortimer v. Bank of Am., N.A.*, 2013 U.S. Dist. LEXIS 51877, 24 (N.D. Cal. Apr. 10, 2013); *cf. Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 53 (2007) ("If willful, however,

---

[8] This is made clear in another decision of the same case.  *See Northrop v. Hoffman of Simsbury, Inc.*, 134 F.3d 4, 45 n.5 (2d Cir. 1997).  Section 1681n was subsequently amended in 1996, 2003, and 2008. *See also Beaudry v. TeleCheck Servs.*, 579 F.3d  at 707-08  (distinguishing cases decided before, or not considering, the "critical" 1996 amendment).

the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages."); *Longman v. Wachovia Bank, N.A.*, 702 F.3d 148, 151 (2d Cir. 2012) ("actual or statutory damages, punitive damages, costs, and attorneys' fees"). The contrary dictum in *Weitz v. Wagner*, 2009 U.S. Dist. LEXIS 110220 (E.D.N.Y Nov. 24, 2009), on which DK relies, has never been cited for this proposition. Plainly, there is nothing in the statute that requires actual loss in order to qualify for statutory damages.[9]

### b. Constitutional standing

DK finally argues that 15 U.S.C. § 1681p (conferring jurisdiction on "any appropriate United Sates district court" to adjudicate any "action to enforce liability created" under FACTA) is unconstitutional as applied here for lack of a justiciable case or controversy under Article III. This deficiency, which would be a fatal non-waivable subject matter jurisdictional flaw if it existed, has thus far not deterred the Supreme Court from construing FACTA as validly authorizing "aggrieved consumers to hold any person who willfully…fails to comply with the Act's requirements liable for specified damages…and jurisdiction will lie in any appropriate United States district court…" *United States v. Bormes*, 133 S. Ct. at 19.[10]

Nothing in the Constitution or case law prohibits Congress from doing what it did in FCRA and FACTA, *i.e.,* creating new, even hitherto unknown, rights and imposing liability for invasion of those rights. Article III does not prohibit Congress from "elevating to the status of legally cognizable injuries concrete, *de facto* injuries that were previously inadequate in law." *Lujan v.*

---

[9] *See* 15 U.S.C.§ 1681n note, enacted by Pub. L. 110-241, 122 Stat. 1565*; see also* 154 Cong. Rec. H00000-29 (daily ed. May 13, 2008) (statement of Rep. Bean) ("They still have to comply with FACTA…If they print enough information to give thieves a toe-hold, they still can be sued. If they print over five digits of the card number, they still can be sued…")

[10] See generally, *Liberty Mut. Ins. Co. v. Wetzel*, 424 U.S. 737, 740 (1976) (dismissing *sua sponte* where the appellate court lacked jurisdiction); Fed. R. Civ. P. 12(h)(3) ("Any time" the court "determines . . . it lacks subject-matter jurisdiction, the court must dismiss the action.")

*Defenders of Wildlife,* 504 U.S. 555, 578 (1992)  Moreover, "the injury required by Art. III may exist solely by virtue of statutes creating legal rights…" *Id.* (quotations and alterations omitted).

It is firmly established that the "injury required by Art. III may exist solely by virtue of statutes creating legal rights, the invasion of which creates standing." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 373 (1982) (quotations omitted); *Warth v. Seldin*, 422 U.S. 490 (1975); *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972); *E.M. v. New York City Dep't of Educ.*, 2014 U.S. App. LEXIS 13257 at *18 (this principle "has long been recognized"); *Donoghue, supra*; *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898, 904 (2d. Cir 1993).  Put another way, "Congress may define new legal rights, which in turn will confer standing to vindicate an injury caused to the claimant." *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268, *272 (S.D.N.Y. 2013) (quotations omitted).

Such actionable statutory rights may be new, unusual, or quite different from traditionally recognized common law rights.  *See, e.g.*, *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982) ("a legal right to truthful information about available housing"); *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205 (1972) (legal interest in living in a racially integrated community); *Nash v. Califano*, 613 F.2d 10 (2d Cir. 1980) (Administrative Law Judges' right to decisional independence); *Evans v. Lynn*, F.2d 571 (right to have programs relating to housing administered in furtherance of a fair housing policy); *Jones v. Experian Info. Solutions, Inc.*, 982 F. Supp. 2d 268 (S.D.N.Y. 2013) (consumer's statutory entitlement to a reasonable investigation once she disputes an item on her credit report); *see also* Cas R. Sunstein, *What's Standing After Lujan? Of Citizen Suits, "Injuries," and Article III*, 91 Mich. L. Rev. 163, 191 (1992).  The violation of such rights is itself injury, and there need not be any further or other loss, monetary or otherwise, to confer standing.  *See Donoghue v. Bulldog Investors Gen. P'ship, supra* (deprivation of right created by Securities and Exchange Act establishes Art. III standing without any showing of further loss or harm); *see also Hammer v. Sam's Club East, Inc.*, 2014 U.S. App.

LEXIS 10452 at *11 ("the actual-injury requirement may be satisfied *solely* by the invasion of a legal right that Congress *created*.")(emphasis original); *Beaudry v. TeleCheck Servs.*, 579 F.3d 702 at 707 ("Congress has the power to create . . . rights of action whose only injury-in-fact involves the violation of that statutory right." (alterations and quotations omitted)).  "Congress has created a duty, Congress can declare that anyone aggrieved can enforce the corollary right." *Evans v. Lynn*, 537 F.2d at 579.  Indeed,  it is a "well-settled principle that a statute may provide any means which can reasonably be thought necessary to deal with the identified evil, even though they may cover instances where it is not present." *Donoghue,* 696 F.3d at 176 (warning not to confuse the wrongdoing that Congress sought to prevent with the legal right conferred).[11]

DK argues that besides the invasion of a legally protected interest, Mr. Katz must additionally show some other or further consequential loss to satisfy standing.  There is no support for this position.  *See Beaudry v. TeleCheck Servs.*, 579 F.3d 702 (6th Cir. 2009) (plaintiff need not allege consequential damages for standing under FCRA).  Plaintiff has standing because he has alleged a concrete and personal invasion of an interest conferred by Congress and protected by FACTA.

Setting aside Congress' specific grant of standing to seek statutory damages, this is not a "no damages" case for purposes of standing.  "[A]n identifiable trifle is enough for standing." *United States v. Students Challenging Regulatory Agency Procedures*, 412 U.S. 669, 689 n.14 (1973); *NRDC, Inc. v. United States FDA*, 710 F.3d 71, 85 (2d Cir. 2013); *DMJ Assocs., L.L.C. v. Capasso*, 288 F. Supp. 2d 262, 271 (E.D.N.Y. 2003); *see also Valley Forge Christian College v. Americans United for Separation of*

---

[11] DK cites *Summers v. Earth Island Ins.*, 555 U.S. 488 (2009) which found the deprivation of "a procedural right *in vacuo*" insufficient to confer standing.  But as the concurrence clarifies, "if Congress had sought to provide redress" for an "interest separate and apart from a procedural right" even "where none existed before," such a statute would be sufficient to confer standing. *Id.* at 501 (Kennedy, J., concurring). Similarly, in *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) the Court found a lack of redressability where a statute made its penalties payable to the Treasury, clearly distinguishing statutes under which an individual plaintiff's ability to personally recover penalties would confer standing, *e.g.* FACTA.  *See id.* at 106 .

*Church & State*, 454 U.S. 464, 497 (1982) (Brennan J., dissenting) ("the Constitution draws no distinction between injuries that are large, and those that are comparatively small….The only distinction that a Constitution guaranteeing justice to all can recognize is one between some injury and none at all."). Thus Article III standing arises from any nonzero injury, however minor or seemingly insignificant. Here Plaintiff, had he been given a non-violative receipt, could have discarded it without undue concern for the security of his credit card identity.[12] The freedom to do so was repeatedly cited by FACTA's drafters and at least one court as a specific object of protection.[13] The deprivation of that right imposed on him by DK is more than enough to confer Article III standing.

Whether Plaintiff's identity was in fact stolen is irrelevant. DK violated the statute, which expressly confers on plaintiff the right to recover statutory damages of $100 to $1000 for that violation alone, absent proof of actual financial loss. FACTA's scheme is meant to prevent identity theft well before such a threat even arises.[14] The statutorily created right to a receipt which does not

---

[12] "[A]t the pleading stage, standing will be upheld where a plaintiff provides some support for his claim of standing and it is possible to presume" or "imagine facts consistent with the complaint…that will show plaintiffs' standing[;] no more is required to establish standing at the pleading stage." *Baur v. Veneman*, 352 F.3d 625, 642 (2d Cir. 2003) (quotations, emphasis, and alterations omitted).

[13] *See, e.g.*, The Fair Credit Reporting Act and Issues Presented by Reauthorization of the Expiring Preemption Provisions, Before the Comm. on Banking, Housing and Urban Affairs, 108th Cong., 78 (2003) (statement of Sen. Schumer) ("In other words, the receipt, the part you discard, does not show the whole number on there so people cannot go into the garbage can pick it up, and duplicate your credit card number."); 149 Cong. Rec. S.1669 (Jan. 28, 2003) (statement of Sen. Feinstein) ("This prevents identity thieves from stealing credit card numbers by retrieving discarded receipts."); 2 Pub. Papers 1676 (Dec. 4, 2003) ("Slips of paper that most people throw away should not hold the key to their savings and financial secrets."); *see also Grabein v. Jupiterimages Corp.*, 2008 U.S. Dist. LEXIS 65828, *21 (S.D. Fla. Jul. 7, 2008) ("Congress could well have been concerned with a typical customer…tossing the 'customer copy' of his credit card receipt in the trash can, and feared that this customer opened himself up to identity theft from an unscrupulous 'dumpster diver' who might retrieve the receipt and use it to make unauthorized purchases.").

[14] Statements on Introduced Bills and Joint Resolutions, 147 Cong. Rec. S9078 (Sep. 4, 2001) (statement of Sen. Shelby) ("These provisions are intended to reduce the opportunities of thieves to

compromise that interest, in itself, is enough to allow the person provided with a violative receipt to present an Article III "case or controversy" as to which Congress can both establish the individual right and provide for a judicial remedy in the federal court system.

## CONCLUSION

For the reasons stated above, Defendants' motion should be denied.

DATED this 26th day of August 2014.

Respectfully submitted,

Herzfeld & Rubin, P.C.

By: /s/: Daniel V. Gsovski
      Daniel V. Gsovski (dg4413)
A Member of the Firm
125 Broad Street
New York, New York 10004-2400
(212) 471-8512
(212) 344-3333 (FAX)
dgsovski@herzfeld-rubin.com

Shimshon Wexler  (sw2392)
The Law Offices of Shimshon Wexler, PC
216 West 104th St., #129
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
shimshonwexler@yahoo.com

---

obtain the consumer data they use to commit fraud in the first place."); 154 Cong. Rec. H00000-29 (daily ed. May 13, 2008) (statement of Rep. Bean) (FACTA "eliminates one avenue for these criminals to steal account numbers…").