## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| YEHUDA KATZ, | ) |
| Individually and on behalf of a class, | ) |
| | ) |
| Plaintiff, | ) Case No. CV: 1:14-cv-00740-PAC |
| v. | ) **SECOND AMENDED** |
| | ) **COMPLAINT** |
| | ) **CLASS ACTION** |
| THE DONNA KARAN COMPANY, LLC; | ) **JURY TRIAL DEMANDED** |
| THE DONNA KARAN COMPANY | ) |
| STORE, LLC; DONNA KARAN | ) |
| INTERNATIONAL, INC. | ) |
| | ) |
| Defendants. | ) |

## INTRODUCTION

1.     Plaintiff Yehuda Katz ("Plaintiff"), individually and on behalf of a class defined herein, brings this action against The Donna Karan Company, LLC, The Donna Karan Company Store, LLC and Donna Karan International, Inc.("Defendants") to secure statutory damages for willful, i.e. reckless, violations of the Fair and Accurate Credit Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.     The operative provision of FACTA, codified at 15 U.S.C. §1681c(g), provides that:

> No person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of

the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

3.     The purpose of this "truncation requirement" is to thwart identity theft.

4.     Despite the clear language of the statute, Defendant willfully or recklessly printed more than the last 5 digits of the card number on a minimum of thousands of receipts provided to cardholders at the point of sale or transaction. As such, Plaintiff and numerous other persons who conducted business with Defendant, each of whom paid for goods using a credit or debit card and were provided with a violative receipt, were subjected to Defendants' violations of § 1681c(g). As consequence, each has been uniformly burdened with an elevated risk of identity theft, and is entitled to an award of statutory damages.

5.     Despite years of publication, notice and near universal compliance by other merchants, Defendants have willfully and recklessly failed to comply with the truncation requirement.  The length and scope of these violations cannot be determined without discovery, but based on the timing and location of the violations with respect to Plaintiff Yehuda Katz ("Plaintiff") the scope of such violations and the number of victims such as Plaintiff plainly meets the numerosity requirements of Federal Rule of Civil Procedure 23(a).

6.     Plaintiff brings this action against Defendants based on their willful and reckless violations of 15 U.S.C. §§ 1681 *et seq.* and seeks statutory damages,

2

attorneys' fees, costs, punitive damages  and such other relief as the Court deems proper.

## JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p ("FCRA").

8.    Venue is proper because Defendants conduct business within this jurisdiction, Defendants' headquarters are in this jurisdiction and the transaction giving rise to this lawsuit occurred within this jurisdiction.

## FACTA

9.    In 2003, FACTA was enacted by Congress and signed into law.  One of FACTA's primary purposes was to amend the FCRA through the addition of identity theft protections.

10.    Congress determined that the credit card account number is the "single most crucial piece of information a criminal would need to perpetrate account fraud." Vol. 154, No. 78 Cong. Rec. H3730 (May 13, 2008) (Rep. Mahoney).

11.    At that time, identity theft had "reached almost epidemic proportions." H.R. Rep. No. 108-263 at 25 (2003). Over 27 million Americans had been victims of identity theft in the past five years, and the estimated cost to consumers and the economy was over fifty billion dollars annually. *See* Federal

3

Trade Commission, *Identity Theft Survey Report* (2003). Every year, identity theft results in billions of dollars of loss, which has a significant effect on consumers and the economy.[1] Further the direct costs of financial fraud, identity theft, or even the fear of identity theft, have a powerful psychological effect on consumers, as "36% of identity theft victims reported moderate or severe emotional distress as a result of the incident." Bureau of Justice Statistics, U.S. Dep't of Justice, *Victims of Identity Theft, 2014*, at 1 (Sept. 2015).

12.    The complex dimensions of identity theft make the risk to any particular consumer near impossible to quantify. Congress is best equipped to evaluate and address that risk.  In doing so with FACTA, Congress decided to "require the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information," and to "limit the number of opportunities for identity thieves to 'pick off' key card account information." S. Rep. No. 108-166, at pp. 3 and 13 (2003).

13.    In enacting FACTA, Congress acted to prevent  identity  theft  that can occur when card holders' private  financial  information, such  as  a  card holder's  complete  credit  card  number,   is  publicly  exposed  on  electronically

---

[1] See Javelin Strategy & Research, 2015 Identity Fraud: Protecting Vulnerable Populations 6, at pp. 7, 14, available at https://www.javelinstrategy.com/file/11696/download?token=yB71qLr7. In 2014 and 2013, respectively, approximately 12.7 million and 13.1 million consumers experienced identity theft. (*Id.*) In 2010, about 7% of households had at least one member who experienced one or more types of identity theft. Bureau of Justice Statistics, U.S. Dep't of Justice, Identity Theft Reported by Households, 2005-2010, at 1 (Nov. 2011).

printed payment card receipts. S*ee* 149 Cong. Rec. H8122-02 (statement of Rep. Shadegg) ("[T]he bill requires that anytime a transaction is made and information is transmitted using a credit card number, that number has to be truncated so that someone who wants to steal your identity by grabbing ahold of your credit card number will not have the full number"); 149 Cong. Rec. H8122-02 (statement of Rep. Jackson-Lee) ("This bill ... will include comprehensive identity theft ... provisions." H.R. Conf. Rep. No. 396, 108th Cong., 1st Sess. (2003) (statement of Rep. Oxley) ("One of the central elements of [the FACTA bill] was to make the new fraud prevention ... contained in the legislation the new uniform national standards on those subject matters. The bill was drafted in this way because identity theft is a national concern."

14.     FACTA thus "requires the truncation of credit and debit card account numbers on electronically printed receipts to prevent criminals from obtaining easy access to such key information." S. Rep. No. 108-166, at 3 (2003)

15.     Congress imposed that requirement "to limit the number of opportunities for identity thieves to 'pick off' key card account information," *id*.at 13, based on its determination that printing more than the last five digits of a consumer's credit card number poses an unacceptable risk of identity theft. *See*,

*e.g.*, FACTA, Pub. L. No. 108-159, Title I, Subtitle A, 117 Stat. 1952 (including truncation requirement in subtitle entitled "identity theft prevention.")

16.    In providing minimum statutory damages of $100 to $1,000 for each violation of the truncation requirement in 15 U.S.C. § 1681n(a)(1)(A), Congress appropriately exercised its power to elevate the specifically identified risk of harm of having a merchant print a receipt showing any of a particular individual's first eleven credit card digits into a legally cognizable injury.

17.    In FACTA, Congress specifically identified the concrete harm it sought to alleviate (identity theft risk), determined that first eleven digits of credit card numbers should be redacted to alleviate that risk, and extended standing to vindicate that right through statutory damages, recoverable by the consumer/cardholder as to each issuance of a receipt resulting from a willful, i.e. reckless, violation of the statute. Congress has further related that injury to the class of persons entitled to bring suit (those who are given a receipt printing prohibited digits of their own credit card information and restricted the right to seek damages to that class of persons only).

18.    The truncation requirement was specifically designed to thwart identity thieves' ability to gain sensitive information regarding a consumer's credit or bank account from a receipt provided to the consumer during a point of sale

transaction, which, through any number of ways, could fall into the hands of someone other than the consumer.

19.    In providing minimum statutory damages of $100 to $1,000 for each violation of the truncation requirement in 15 U.S.C. § 1681n(a)(1)(A), Congress appropriately exercised its power to elevate the specifically identified risk of harm of having a merchant print a receipt showing any of a particular individual's first eleven credit card digits into a legally cognizable injury.

20.    After enactment, FACTA provided three years in which to comply with its requirements, mandating full compliance with its provisions no later than December 4, 2006.

21.    With respect to point of sale machines, terminals or devices that were first put into use after January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1).

22.    Because a handful of large retailers did not comply with their contractual obligations with the card companies and the straightforward requirements of FACTA, Congress passed The Credit and Debit Card Receipt Clarification Act of 2007 in order to make technical corrections to the definition of willful noncompliance with respect to violations involving the printing of an

expiration date on certain credit and debit card receipts before the date of the enactment of this Act.[2]

23.     With respect to point of sale machines, terminals or devices that had been in use before January 1, 2005, 15 U.S.C. § 1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. § 1681c(g)(1) on or after December 1, 2006

24.     On June 3, 2008, President George W. Bush signed The Credit and Debit Card Receipt Clarification Act (Clarification Act), which amended FACTA. The Clarification Act provides that "any person who printed an expiration date on any receipt provided to a consumer cardholder at a point of sale or transaction between December 4, 2004, and the date of the enactment of this subsection but otherwise complied with the requirements of section 605(g) for such receipt shall not be in willful noncompliance with section 605(g) by reason of printing such expiration date on the receipt."

25.     Importantly, the Clarification Act did not amend FACTA to allow publication of the expiration date of the card number.  Instead, it simply provided amnesty for certain past violators up to June 3, 2008.  The Clarification Act did not address either the truncation requirement or the right to damages for violations of

---

[2] Source: https://www.govtrack.us/congress/bills/110/hr4008/text (Last accessed: Oct. 19, 2015).

the truncation requirement, which have remained unchanged since the initial enactment and effective dates of FACTA.

### Defendant's Prior Knowledge of FACTA

26.     Upon information and belief, Defendants are members of various trade groups that informed their members about the truncation requirements. Defendants, on information and belief, received and understood such communications.

27.     Defendants accept Visa, MasterCard, Discover credit and debit cards and American Express credit cards in the course of transacting business with persons who make purchases at Defendants' retail locations.

28.     Banks and credit card associations (i.e. Visa, MasterCard, American Express, Discover, etc.) have informed their merchants, such as Defendants, for years about FACTA and it's the truncation requirement.

29.     VISA, MasterCard, the PCI Security Standards Council (a consortium founded by VISA, MasterCard, Discover, American Express), companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed merchants, such as Defendants, about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers.

30.    Defendants, by the terms of the contracts they entered with Visa, MasterCard, American Express, and/or Discover, acknowledged their awareness of FACTA's truncation requirements and expressly agreed to be FACTA compliant.

31.    Visa explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

32.    For example, the August 12, 2006 edition of "Rules for Visa Merchants" (p. 62), which is distributed to and binding upon all merchants that accept Visa cards, expressly requires that "only the last four digits of an account number should be printed on the customer's copy of the receipt" and "the expiration date should not appear at all." These statements were accompanied by a picture of a receipt showing precisely what had to be removed. VISA required complete compliance by July 1, 2006, five months ahead of the statutory deadline. Defendants, on information and belief, received this and subsequent Rules from Visa.

33.    MasterCard has explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

34.     American Express has explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

35.     Discover has explicitly instructed merchants, including Defendants, that a credit or debit card number must be truncated to no more than five digits and that the expiration date must be truncated entirely.

36.     Defendants, on information and belief, received and understood such communications.

37.     A bulletin dated June 14, 2006 issued by AllianceData, a credit card processor, informed its customers that under FACTA "no person that accepts credit cards or debt cards for the transaction of business shall print more that the last 5 digits of the card number . . . upon any receipt provided to the cardholder at the point of sale transaction." It further stated that Visa required compliance by July 1, 2006 and MasterCard by April 1, 2005.

38.     Governmental agencies have informed business, including Defendants, about the importance of FACTA, why the law is in place and what business must do to be compliant or risk statutory penalties.  For example, the Federal Trade Commission issued a business alert in May 2007.

39.     In May 2007, the Federal Trade Commission issued a business alert entitled "Slip Showing? Federal Law Requires All Businesses to Truncate Credit

11

Card Information on Receipts," which stated: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the card's expiration date." The FTC alert further informed businesses that "you may include no more than the last five digits of the [credit and debit] card number, and you must delete the [credit and debit] card's expiration date."

40.    By virtue of the matters set forth in paragraphs 26-39 above, Defendants knew or should have known of their obligations under FACTA for years before the FACTA violations identified in this Complaint.

41.    Despite actual knowledge of FACTA's requirements, contractual requirements from credit card issuers that Defendants must be FACTA compliant, and notifications from credit card issuers and the federal government, Defendants continue to willfully disregard FACTA's requirements and have continued to use cash registers or other point of sale machines or devices that printed receipts in violation the truncation requirement after 2006 up to and through the date this lawsuit was commenced.

## PARTIES

42.   Plaintiff, Yehuda Katz, is a resident of New York.

43.  Defendant The Donna Karan Company, LLC is a New York limited liability company with an address for service of process at 240 West 40th St., New York, NY 10018.

44.  Defendant The Donna Karan Company Store, LLC is a New York limited liability company with an address for service of process at 240 West 40th St., New York, NY 10018.

45.  Defendant Donna Karan International, Inc. is a Delaware corporation with an address for service of process of 550 Seventh Avenue, New York, NY 10018

46.  Defendants are each a "person that accepts credit cards or debit cards for the transaction of business" within the meaning of FACTA.

## CLASS ALLEGATIONS

47.  Plaintiff brings this action on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

48.  The proposed class is defined as:

All persons in the United States who used either a debit or credit card at any of Defendants' locations and were provided an electronically printed receipt at the point of sale or transaction by any Defendant showing more than the last five digits of that person's credit or debit card number for a time period beginning June 4, 2009 until the date of the class is certified.

49.  The class is so numerous that joinder of all individual members in one action would be impracticable.

50.    There are, on information and belief, hundreds if not thousands of persons who meet the class definition, all of whom can be individually identified through the use of their credit card data, or through other customer databases, such as catalog mailing lists, kept and maintained by defendants.

51.    Plaintiff's claims are typical of the claims of the class members.  All are based on the same legal theories and arise from the same conduct. There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

a.    Whether Defendants provided customers with a sales or transaction receipts which failed to comply with the truncation requirement;

b.    Whether Defendants' conduct was sufficiently reckless to qualify as "willful" under FACTA.

c.    The uniform amount of statutory damages to award to each member of the class.

52.    Plaintiff will fairly and adequately represent the class members.

53.    Plaintiff has no interests that conflict with the interests of the class members.

54.    Plaintiff has retained counsel experienced in consumer class action matters.

55.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members.

14

## CLAIM FOR RELIEF

56.     Plaintiff repeats all previous allegations with the same force and effect as if fully stated herein.

57.     In transacting their business, Defendants use numerous cash registers and/or other machines or devices that electronically print receipts for credit card and debit card transactions.

58.     Plaintiff is the holder of a "VISA" bank issued credit and/or debit card as defined under 15 U.S.C. § 1681a.

59.     On   January 13, 2014, Plaintiff presented his credit card to make a purchase at Defendants' store located at 1 Premium Boulevard, Tipton Falls, New Jersey.

60.     On February 2, 2014, Plaintiff presented his credit card to make a purchase at Defendants' store located at 420 West Broadway, New York, New York.

61.     At the completion of each of the above purchases, Plaintiff was given a customer copy of a computer-generated cash register receipt that published the first six digits of Plaintiff's credit card number. (hereinafter the "Katz Receipts"). The Katz Receipts also published the last four digits of Plaintiff's credit card number.

62.    On information and belief, Defendants' computer systems which generated the Katz Receipts were programmed through hardware or software design and setup to print the six first digits of credit card numbers on each and every credit card receipt that Defendants' computer systems or any of their constituent hardware and software components generated.

63.    The terminal which generated the first Katz Receipt on January 13, 2014, is located a "DKNY Company Store" situated in a prime location at one of the ground level pedestrian entrances to a major shopping mall complex in Tipton Falls, New Jersey, which includes retail operations of more than 120 other merchants.

64.    The terminal which generated the second Katz Receipt on February 2, 2016, was located at an extremely busy store in the Soho area, a tourist attraction in New York City which draws extraordinarily high retail traffic, including shoppers from around the United States.

65.    On information and belief, the checkout terminals which generated the Katz Receipts are each only one of several such terminals in each store.

66.    Defendants directly operate three additional "DKNY" retail stores in New York City, at prime high traffic locations, and at least one location selling "Donna Karan" branded items from Defendants' top of the line and couture brand,

and also operate more than 50 DKNY and DKNY Company Store retail stores throughout the United States.

67.   Each of the two Katz Receipts, generated over one week apart at two stores located nearly 60 miles from each other, and in two different states, printed the exact same credit card account digits, which FACTA requires shall not be printed.

68.  The locations and timing of Defendants' issuance of the two Katz Receipts support the reasonable and plausible inferences that, a) at the time that the Katz Receipts were issued, many if not all cash register terminals at all of Defendants' retail locations throughout the United States were deliberately programmed to issue customer receipts identical in all material respects to the Katz Receipts with respect to the failure to truncate credit card account numbers; 2) Defendants had not deployed any available safeguards against printing receipts in violation of the truncation requirement – not even simple visual inspection of receipts at the point of sale – as a result of which 3)  receipts issued  by Defendants to class members, including  but not limited to Mr. Katz, did not reflect a "merely procedural" violation of the truncation requirement, but exactly the reckless, i.e. willful, systematic dissemination of personal information which FACTA was enacted to protect from disclosure, i.e. concrete particularized harm which FACTA made redressable by providing a statutory damages remedy.  See,

*Spokeo v. Robbins*, 136 S. Ct. 1540, 1549 (2016); *Donoghue v. Bulldog Investors Gen. P'ship*, 696 F.3d 170, 175 (2d Cir. 2012); *Hammer v. Sam's East,* 754 F.3d 492, 498-99 (8th Cir. 2014).

69.    The number of transactions with Defendants generating illegal receipts under FACTA can total into the tens or hundreds of thousands per year in New York City alone, and many times that amount nationwide.

70.    In allowing point of sale receipts for in-store transactions such as the Katz Receipts to include digits other than the last five digits of customers' credit card numbers throughout their nationwide retail outlets, Defendants acted in reckless disregard of the applicable legal standard, as to which they have been on repeated actual notice for many years.

71.    This, and other conduct of Defendants alleged herein, was "not only a violation under a reasonable reading of the statute's terms, but . . .  the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless," and was thus "willful" within the meaning of FACTA, as established by the United States Supreme Court.  *Safeco Ins. Co. of America v. Burr*, 551 U.S. 47, 68 (2007).

72.    Defendant violated 15 U.S.C. § 1681c(g)(1), which provides that:

> ...***no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number*** or the expiration date upon any

receipt provided to the cardholder at the point of sale or transaction.

15 U.S.C. § 1681c(g)(1) (emphasis added).

73.   FCRA, 15 U.S.C. § 1681n, provides:

§ 1681n. Civil Liability for willful noncompliance

(a) In general.  Any person who willfully fails to comply with any requirement imposed under this title [15 USC §§ 1681 *et seq.*] with respect to any consumer is liable to that consumer in an amount equal to the sum of -

(1) (A) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; [ ]

(2) such amount of punitive damages as the court may allow; and

(3) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court…

74.  FCRA, 15 U.S.C. § 1681p, further provides:

§ 1681p. Jurisdiction of courts; limitation of actions

An action to enforce any liability created under this title [15 U.S.C. §1681 *et seq.*] may be brought in any appropriate United States district court, without regard to the amount in controversy, or in any other court of competent jurisdiction, not later than the earlier of –

(1) 2 years after the date of discovery by plaintiff of the violation that is the basis for such liability; or

(2) 5 years after the date on which the violation that is the basis for such liability occurs.

75.    Plaintiff Katz, and each member of the class as defined, above, has standing to sue in this court under 15 U.S.C. § 1681p, for the statutory damages of not less than $100 nor more than $1,000 provided under 15 U.S.C. § 1681n (a)(1)(A), on any or all of the following bases:

   a.    In FACTA, Congress created a substantive legal right for Katz and other consumers to receive printed receipts truncating their personal credit card numbers, for the declared purposed of protecting their financial information from the risk of disclosure and ameliorating the risk of identity theft, which Congress specifically identified and addressed through the truncation requirement;

   b.    Upon signing FACTA into law, President Bush remarked that "Slips of paper that most people throw away should not hold the key to their savings and financial secrets." 39 Weekly Comp. Pres. Doc. 1746, 1757 (Dec. 4, 2003). President Bush added that the government, through FACTA, was "act[ing] to protect individual privacy." Id.

   c.    Defendant invaded Plaintiff's privacy by disclosing Plaintiff's private information to those of Defendant's employees who handled the receipts, as well as other persons who might find the receipts in the trash or elsewhere.

d.      The substantive legal right created by Congress is closely analogous to recognized common law privacy interests which have traditionally be recognized as redressable by individuals suing for violation of their own rights.

e.      Katz and putative class members each personally suffered a concrete harm in receiving receipts that violated this right.

f.      Such particularized concrete injury-in-fact is redressable by a decision in Mr. Katz's and class members' favor awarding the damages Congress expressly mandated with respect to each of Defendants' violations of FACTA, here the truncation requirement.

76.      WHEREFORE, Plaintiff requests this Court to: 1) certify the class as described herein; and 2) enter judgment in favor of Plaintiff and the class members and against Defendants awarding:

a.      Statutory damages of no less than $100 nor more than $1,000 per violation;

b.      Pre-and post-judgment interest, attorneys' fees and costs;

c.      Punitive damages, in an amount to be proven at trial; and

d.      Such other and further relief as the Court may deem proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury on all issues so triable.

DATED this 4th day of August 2016.


Law Offices of Shimshon Wexler, PC


By: /s/: Shimshon Wexler
     Shimshon Wexler  (sw2392)
216 West 104th St., #129
New York, New York 10025
(212) 760-2400
(917) 512-6132 (FAX)
shimshonwexler@yahoo.com